# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | Criminal Action No. 5:14-cr-00559-JMC-3 |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| ) | |
| Alfredo De Jusus Ramirez ) | |
| ) | |
| _____) | |

This matter is currently before the court on Defendant Alfredo De Jusus Ramirez's ("Defendant") Motion in Limine to Exclude Evidence Not Related to the Conspiracy Pursuant to Rule 404(b), Fed. R. Evid. (ECF No. 153) and Defendant's Motion to Suppress (ECF Nos. 178, 179), seeking to suppress all evidence seized from a February 2013 traffic stop, as well as all statements made to authorities following the stop.

For the reasons set forth herein, the court thereby **DENIES** Defendant's Motion in Limine to Exclude Evidence Not Related to the Conspiracy Pursuant to Rule 404(b), Fed. R. Evid. (ECF No. 153) and **DENIES** Defendant's Motion to Suppress (ECF No. 178).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2014, a grand jury handed down a Superseding Indictment charging four defendants with four counts. (ECF No. 56.) Defendant is charged only with Count I: Conspiracy to Distribute Controlled Substance, alleging that beginning in or around 2010, Defendants conspired to possess with intent to distribute and to distribute 500 grams or more of a mixture or substance containing methamphetamine and 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (*Id.* at 1-2.)

1

On February 24, 2015, Defendants Douglas Charles Harry, Charles Allen Wallace, and Tiffany Lynn Walden pled guilty to the charges against them (ECF Nos. 138, 139, 140, 141), leaving Count I against Defendant Ramirez as the only pending charge in this matter.

At issue in the pending motions is a traffic stop by Officer Scott Baker that took place on February 22, 2013, in Rutherford County, Tennessee. (ECF Nos. 155 at 1; 179 at 1.) Defendant turned over $20,000 and a small amount of methamphetamine to Officer Baker during the stop. (ECF Nos. 155 at 2; 179 at 1.) Defendant told Officer Baker he delivered a package from Atlanta to Kentucky[1], and was given the baggie of methamphetamine and $20,000 in return for delivering the package. (ECF No. 155 at 1-2.) Defendant told Officer Baker he had made three trips, including the trip made at the time of the stop, to deliver drugs. (ECF Nos. 155 at 2; 179 at 1.) Defendant also provided a phone number to the DEA which had been used by alleged co-conspirators to call for methamphetamine pickups. (ECF No. 155 at 2.) The entire stop was captured by video, but some sections of the video do not contain audio. (ECF No. 179 at 1, n.1.)

The matter is currently before the court on Defendant's Motion in Limine to Exclude Evidence Not Related to the Conspiracy Pursuant to Rule 404(b), Fed. R. Evid., filed March 20, 2015. (ECF No. 153.) Defendant moves the court to exclude evidence of "any alleged bad act committed by the Defendant that did not form part of the conspiracy charged in this matter" under Rules 403 and 404(b). (*Id.* at 1.) Also on March 20, 2015, but after Defendant's Motion was filed, the Government filed a Notification of Intent to Use Evidence, stating it intends to offer evidence regarding the events surrounding the February 2013 traffic stop. (ECF No. 155.)

Also at issue is Defendant's Motion to Suppress, filed May 14, 2015. (ECF Nos. 178,

---

[1] Additional references to the delivery route state Tennessee, rather than Kentucky.

179.)   Defendant moves to suppress all evidence seized from the February 2013 traffic stop, as well as all statements made to authorities following the stop.  (ECF No. 178 at 1.)

The court held a hearing on July 28, 2015, to hear arguments from the parties on these motions.  (ECF No. 185.)  In addition to the parties' arguments, the Government offered the testimony of Officer Baker, the traffic citation issued to Defendant, the video and transcript of the February 2013 traffic stop, a property seizure record, and a photograph of the currency seized from Defendant.  (ECF No. 186.)

## II. LEGAL STANDARD AND ANALYSIS

**A.  Motion in Limine to Exclude Evidence Not Related to the Conspiracy**

Federal Rule of Evidence 404(b) states, "(1) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. …  (2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

"[E]vidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence, i.e., evidence of other acts, for purposes of Rule 404(b).  Acts committed in furtherance of the charged conspiracy are themselves part of the act charged.  Thus, evidence of such acts constitutes intrinsic evidence—that is, direct evidence of the charged conspiracy itself." *United States v. Melvin,* 2007 WL 2046735, at *13 (4th Cir. July 13, 2007) (internal quotes and citation omitted).

Rule 404(b) does not apply to intrinsic acts.  *United States v. Chin,* 83 F.3d 83, 88 (4th Cir. 1996).  "Other criminal acts are intrinsic when they are inextricably intertwined or both acts

3

are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Id.* (internal quotes and citation omitted).

If a prior bad act is considered to be extrinsic to the crime charged, it may be admitted under 404(b) "if it meets the following criteria: (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process. [Fed. R. Evid. 403.]" *United States v. Queen,* 132 F.3d 991, 997 (4th Cir. 1997).

The Government argues this evidence is: (1) direct evidence of the charged conspiracy (ECF No. 155 at 2), (2) intrinsic to the conspiracy (*id.* at 3), and (3) is admissible pursuant to Fed. R. Evid. 404(b) (*id.* at 4). The court agrees.

First, the Government seeks to introduce evidence gathered from the February 2013 traffic stop as direct, intrinsic evidence of the conspiracy and Defendant's role in it. (*Id.* at 1.) At the hearing, the Government stated evidence gathered from the traffic stop would complete the story of Defendant's involvement in the conspiracy, specifically that Defendant is involved in the delivery of drugs. Defendant argued the Government seeks to offer this evidence to show that if Defendant dealt drugs in Tennessee, he would also likely deal drugs in Georgia or South Carolina. The court, however, does not interpret the Government's proposed use of this evidence as such.

4

As a result of the stop, Defendant told authorities that prior to the time he was stopped, he had delivered a package and in exchange was given $20,000 and a baggie of methamphetamine. (ECF No. 155 at 1-2.) Defendant also told authorities he had couriered packages between Atlanta and Nashville before that time. (*Id.* at 2.) These actions are not only direct evidence of Defendant's role in the conspiracy, but the delivery of drugs between Atlanta and Nashville is, as the Government argues, "inextricably intertwined" with the conspiracy. (*See id.* at 3; *see also Chin,* 83 F.3d at 88.) Further, the traffic stop occurred in 2013; the conspiracy is alleged to have begun in 2010 and to have continued up to October 2014, the date of the Superseding Indictment, thus evidence from the stop is not too remote in time to be relevant to the conspiracy. (ECF No. 155 at 2; *see* ECF No. 56 at 1.)

Alternatively, the Government argues that even if these acts would be considered extrinsic, this evidence would be admissible under Rule 404(b) "to prove the Defendant's identity, intent, knowledge, and absence of mistake or accident." (ECF No. 155 at 4-10.) The court agrees.

Evidence gathered from the traffic stop meets the first two criteria under the four-part *Queen* test: relevance and necessity. Defendant is charged with conspiracy under 21 U.S.C. § 841(a)(1), which states, "it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." As such, "a defendant's knowledge and intent are clearly elements which the prosecution must establish to prove a conspiracy to violate 21 U.S.C. § 841(a)(1)." *United States v. Mark,* 943 F.2d 444, 448 (4th Cir. 1991). The court agrees with the Government's argument that the stop shows evidence of Defendant's knowledge of his illegal

activity. Further, if Defendant indeed continued to deliver narcotics after the stop, as the Government alleges, the evidence from the stop shows that he had intent to commit the act.

Additionally, evidence from the traffic stop goes to proving Defendant's identity. Information gathered from the stop confirms Defendant's basic biographical information and identifies him as an actor in the conspiracy. Further, the stop and subsequent interview shows evidence that the transport of methamphetamine by Defendant was not a mistake or accident. Both of these uses of the evidence—identity and lack of mistake or accident—are permitted under the express wording of Rule 404(b).

Further, the evidence from the stop is reliable. Not only is the stop recorded on video, but the warning citation and Notice of Property Seizure record confirm Defendant's possession of the $20,000 and baggie of methamphetamine. In addition, the Government states it intends to produce witnesses to the traffic stop and the subsequent interview; these witnesses will testify under oath and be subject to cross-examination. *See United States v. Gray,* 405 F.3d 227, 240 (4th Cir. 2005) (noting the admitted prior bad acts evidence was reliable because "[t]hese witnesses testified under oath and were subject to cross-examination, such that [the defendant] had ample opportunity to challenge the reliability of their accounts").

Finally, any prejudice toward Defendant as a result of this evidence does not substantially outweigh the probative value. "There is no unfair prejudice under Rule 403 when the extrinsic act is no more sensational or disturbing than the crimes with which the defendant was charged." *United States v. Sappleton,* 68 F. App'x 438, 440 (4th Cir. 2003) (citing *United States v. Boyd,* 53 F.3d 631, 637 (4th Cir.1995)). As the evidence will be used to show Defendant's involvement in the drug conspiracy, it is naturally no more "sensational or disturbing" than the crime charged.

Defendant argues that if he is indeed delivering illegal substances, he does not need to be stopped by law enforcement to know that act is illegal, and thus the traffic stop is not necessary to establish knowledge and intent. However, Rule 404(b) is a rule of inclusion, and as this evidence meets the requirements as set forth by the Fourth Circuit, it should not be excluded. *See United States v. Young,* 248 F.3d 260, 271-72 (4th Cir. 2001) ("Rule 404(b) is viewed as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." (internal quotes and citation omitted)).

**B. Motion to Suppress**

Defendant argues the February 2013 traffic stop violated the Fourth Amendment, and therefore all evidence gathered from it and the resulting interview should be suppressed. (ECF No. 178 at 1.) Evidence obtained from an unreasonable search violates the Fourth Amendment and must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471 (1963).

The Government argues: (1) the officer had probable cause to initiate the traffic stop (ECF No. 180 at 2), (2) the officer did not unreasonably prolong the stop (*id.* at 4), (3) Defendant voluntarily consented to the search of his truck (*id.* at 11), and (4) the officer had reasonable suspicion to prolong the stop in order to dispel suspicions of illegal activity (*id.* at 17).

*i. Probable Cause*

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996).

At the hearing, Officer Baker testified he witnessed Defendant following too closely behind a tractor-trailer. Additionally, Officer Baker testified, he noticed a temporary tag on the vehicle that did not display clearly visible information from a distance of 50 feet, as required by

7

Tennessee law. Officer Baker also noted at the hearing that the information on the temporary tag was not clearly visible in the video recording of the stop, during which the camera was roughly 20 feet away. Further, Officer Baker testified he could not discern the race of the driver in the vehicle when he initiated the stop.

Defense counsel had the opportunity at the hearing to cross examine Officer Baker and was not able to bring forth any evidence or argument to refute Officer Baker's testimony regarding the reason he initiated the traffic stop such that the court would be inclined to believe Officer Baker had reasons other than those he stated to pull over Defendant. As such, the court finds Officer Baker had probable cause for the traffic stop, and the stop, as an initial matter, was not an unreasonable seizure under the Fourth Amendment.

*ii. Duration of the stop*

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States,* 135 S. Ct. 1609, 1614 (2015) (internal quotes and citations omitted). However, "[a]n officer… may conduct certain unrelated checks during an otherwise lawful traffic stop. But… he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615.

Defendant argues that once Officer Baker completed writing the citation, even if he had not yet issued the citation to Defendant, the mission of the stop was completed, and any activity that continued beyond that was unlawful. However, "[t]o prolong a traffic stop beyond the scope

of a routine stop, the officer must have either the driver's consent or a reasonable suspicion of illegal activity." *United States v. Green,* 740 F.3d 275, 280 (4th Cir. 2014). The video of the traffic stop reveals Defendant consenting to a search of his vehicle on two occasions. In addition, Officer Baker testified that inconsistencies in Defendant's answers to the Officer's questions and vague responses from Defendant to some questions, in contrast to clear, detailed responses to others aroused reasonable suspicion that Defendant was engaged in illegal activity beyond the scope of the traffic stop. However, Defendant argues, (1) that the consent was not freely and voluntarily given and (2) that Officer Baker did not have reasonable suspicion to extend the duration of the stop.

  *a. Consent*

The first consideration with regard to consent in this case is the timing of the consent. If Officer Baker obtained consent after he completed writing the ticket, and therefore after the "mission" of the stop had been completed, the request for consent and continued questions could be considered unlawful if they unreasonably prolonged the stop.

Officer Baker's ticket book is first visible in the video at time stamp 08:51:51 and he begins to make notations on the citation at 08:52:29. Officer Baker continues to ask Defendant questions while completing the citation, and continues to make notations on the ticket book through 08:56:33 when Officer Baker asks Defendant if he would have any objection to searching Defendant's vehicle. In fact, Officer Baker makes notations in the book while he asks for permission, and continues to write in the book when Defendant responds "no," he did not have any objections to a search. As such, Officer Baker had not completed writing the ticket. Further, consent was granted roughly seven and a half minutes from the time Officer Baker first approached Defendant's vehicle, and the request for consent took less than five seconds. At this

9

point, the stop was neither unreasonably long in duration, nor was the request so long as to unreasonably extend the stop.  *See United States v. Davis,* 645 F. Supp. 2d 541, 550-51 (W.D.N.C. 2009) *aff'd,* 460 F. App'x 226 (4th Cir. 2011) (Officer requested consent to search 14 minutes into a stop and the request took "only a few seconds." "Because [the officer's] request for consent did not unreasonably extend the duration of the stop, the additional questioning of the Defendant for the limited purpose of seeking his consent to search the vehicle did not render his continued detention unlawful.")  Even if the court was to include the initial two minutes and 38 seconds that elapsed from the time Defendant and Officer Baker stopped at the side of the road until Officer Baker had changed the batteries in his audio transmitter and approached Defendant's vehicle, this would put the initial grant of consent at roughly 10 minutes into the stop.  At 10 minutes, the stop is still of a reasonable duration.

   Having determined consent was obtained within a reasonable duration of time and while the mission of the stop was ongoing, the court must now examine whether that consent was voluntarily given.  "In determining whether consent to search was freely and voluntarily given, the totality of the circumstances surrounding the consent must be examined."  *United States v. Lattimore,* 87 F.3d 647, 650 (4th Cir. 1996) (citation omitted).  Some of the factors to consider in evaluating whether consent is freely and voluntarily given are: the age of the defendant, the defendant's intelligence and education, lack of advice to defendant on constitutional rights, length of detention, *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973) (citations omitted), "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the

physical touching by the police of the citizen." *United States v. Weaver,* 282 F.3d 302, 310 (4th Cir. 2002).

Although Defendant was just 19 years old at the time of the traffic stop, neither party has argued he was unable to knowingly consent to the search nor that he lacked the education or intelligence to do so. As discussed, the traffic stop had gone on for roughly seven and a half minutes at the time Officer Baker obtained consent, and was thus not unreasonably long in duration. The stop occurred in daylight on a busy roadway, allowing for clear visibility of the situation for all parties and in the presence of a number of witnesses passing by the stop. Officer Baker maintained a calm and professional tone throughout the stop, using no unduly coercive phrases or tones, and he did not touch or brandish his weapon. This does not indicate Defendant was coerced, bullied, or pressured into giving consent. The totality of the circumstances indicates Defendant's consent was given freely and voluntarily.

Defendant further argued that, as Officer Baker fully admitted, Defendant was not free to go at any time during the stop, and therefore he could not have freely and voluntarily consented. Although the Government disputes that Defendant was ever "in custody," even if Defendant *was* considered to be in custody, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson,* 423 U.S. 411, 424 (1976). Taken with the other factors discussed above, the totality of the circumstances—including that Defendant was not free to leave—does not indicate anything other than consent that was freely and voluntarily given.

Further, Defendant consented a second time at time stamp 08:59:36, roughly three minutes after he gave consent the first time. While Officer Baker did not need to obtain consent

11

a second time, this serves to reiterate that he had permission from Defendant to not only search the vehicle, but to prolong the stop. *See United States v. Ortiz,* 669 F.3d 439, 447 (4th Cir. 2012) ("[O]nce voluntary consent is given, it remains valid until it is withdrawn *by the defendant.* It is irrelevant that the officers, for their own reasons, chose to secure a second consent before searching [the defendant's] vehicle." (citation omitted) (emphasis in original))

As the court has found Defendant freely and voluntarily consented to the search, "he necessarily consented to an extension of the traffic stop long enough for the officers to conduct the search." *See United States v. Davis,* 460 F. App'x 226, 232 (4th Cir. 2011) (unpublished). Therefore, the search was not prolonged unreasonably and was not unreasonable in violation of the Fourth Amendment.

*b. Reasonable suspicion*

"Reasonable suspicion is demonstrated when an officer points to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Mason,* 628 F.3d 123, 128 (4th Cir. 2010) (internal quotes and citation omitted).

Defendant concedes that Officer Baker had enough reasonable suspicion to conduct a search after he spoke with Defendant's wife, the passenger in the car at the time of the stop, and she gave a conflicting account to the account Defendant had provided. Officer Baker began speaking with Defendant's wife at time stamp 09:00:28 on the video, roughly 11 minutes from the time Officer Baker first approached the vehicle. Defendant contends that by this time the stop had continued for an unreasonable duration and beyond the mission of the stop, and thus was not reasonable under the Fourth Amendment.

However, having determined Defendant freely and voluntarily gave consent within seven and a half minutes of the initiation of the stop, whether Officer Baker had reasonable suspicion prior to speaking with Defendant's wife is irrelevant. Instead, Officer Baker had been granted permission by Defendant to continue the stop. As the stop continued, Officer Baker was able to obtain reasonable suspicion, which gave him two grounds on which to search the vehicle.

As such, the stop was not unreasonable under the Fourth Amendment, and thus the evidence obtained from the stop and subsequent interview are admissible at trial.

### III. CONCLUSION

Based on the aforementioned reasons, it is therefore ordered that Defendant's Motion in Limine to Exclude Evidence Not Related to the Conspiracy Pursuant to Rule 404(b), Fed. R. Evid. (ECF No. 153) is **DENIED** and Defendant's Motion to Suppress (ECF Nos. 178) is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 30, 2015
Columbia, South Carolina